IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02305-WDM-PAC

BENAD ABIODUN,

        Applicant,

v.

DOUG MAURER,
DEPARTMENT OF HOMELAND SECURITY,
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,
JOHN SUTHERS, Attorney General of the State of Colorado,

        Respondents.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Patricia A. Coan, United States Magistrate Judge

        This is a habeas corpus proceeding under 28 U.S.C. §2254 filed by Applicant

Benad Abiodun.  A February 1, 2006 Order of Reference referred the Application to the

undersigned to issue a recommendation on disposition.  The Colorado Attorney General

filed an Answer on February 6, 2006.[1]  Applicant filed his traverse on March 2, 2006.  The

state court record was filed in this court on July 25, 2006.

I.

        Mr. Abiodun was convicted by a Jefferson County District Court jury of two counts

of possession, and two counts of distribution, of a controlled substance (cocaine).  He was

sentenced to a four-year term of imprisonment with the Colorado Department of

_____

[1]Respondents Maurer, Department of Homeland Security, and Bureau of Immigration and
Customs Enforcement filed a Motion to Dismiss the claims against them on February 6, 2006.  I
recommended that the Motion to Dismiss be granted on July 11, 2006.  The Recommendation is pending
before District Judge Miller.

Corrections, followed by a five years of mandatory parole.  Mr. Abiodun was paroled on December 30, 2004 and is currently in the custody of federal immigration authorities awaiting removal.  *See* July 11, 2006 Recommendation of United States Magistrate Judge.[2]

The following relevant facts are contained in the state court record.  On June 15, 2001, a confidential informant contacted City of Wheatridge Detective Tom Cunningham, who was assigned to the West Metro Drug Task Force.  (R. Vol. 2, Testimony of Tom Cunningham) The informant told Cunningham that he had information about illegal drug activity occurring at the Abiodun residence.  (*Id.*) Cunningham and the informant agreed that the informant would arrange two drug transactions and would be paid $250.00.  (*Id.*)

According to Detective Cunningham, the following events occurred on June 21, 2001.  (R. Vol. 2, Cunningham testimony) The informant, wearing an eavesdropping device, called the Abiodun residence and arranged to buy cocaine from Abiodun's wife, Toni Abiodun.  Detective Cunningham and the informant drove to the Abiodun residence that afternoon.  The informant went into the Abiodun apartment, while Cunningham waited in the car. Mrs. Abiodun told the informant that she did not have any drugs in her apartment and that he would have to wait for her husband to get home.  The informant came out to the car to tell Detective Cunningham what was happening and then went back inside the apartment.  Abiodun arrived twenty to thirty minutes later.  The Abioduns spoke

---

[2]As discussed in the July 11, 2006 Recommendation of United States Magistrate Judge, Applicant remains in the custody of the State while serving his term of mandatory parole and thus satisfies the statutory "in custody" requirement.  *See* 28 U.S.C. §2254(a); *Jones v. Cunningham,* 371 U.S. 236 (1977); *Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981).

outside for a few minutes, went inside, and then Abiodun came back out and drove away. Another detective followed Abiodun to a convenience store.  Abiodun returned to the apartment approximately ten minutes later and went inside.  Shortly thereafter, the informant emerged from the apartment, got into the car with Detective Cunningham, and stated that the drug transaction had been completed.  The informant handed the detective a small baggie containing what was later determined to be 2.55 grams of crack cocaine. Detective Cunningham had given the informant $600 to purchase the crack cocaine.

The informant arranged another drug transaction six days later, on June 27, 1001. (R. Vol. 2, Cunningham testimony) The transaction was to purchase one ounce of crack cocaine for $2,000.  (*Id.*) The informant worked with Officer St. Aubin undercover during the transaction.  (*Id.*)   Officer St. Aubin and the informant met Abiodun in a Safeway parking lot, while Detectives Cunningham and Barrera monitored the transaction. (*Id.;* R. Vol. 2, Testimony of Chad St. Aubin)  Officer St. Aubin waived Abiodun over to his truck and Abiodun got into the truck with St. Aubin and the informant. (*Id.*, St. Aubin testimony) Officer St. Aubin asked Abiodun if he "had taken care of [him]" with the amount of cocaine and Abiodun responded that "it was due to his source what determined the cost and quality." (*Id.*) Abiodun then produced a bag from his pocket which contained what was later confirmed to be 24.85 grams of cocaine. (*Id.*; R. Vol. 2, Cunningham testimony)  Officer St. Aubin gave the arrest signal immediately after Abiodun produced the bag. (R. Vol. 2, St. Aubin testimony)

Applicant's defense at trial was that he had no choice about his participation in the drug transactions because he was afraid for his family.  (R. Vol. 3, Testimony of Benad

3

Abiodun) Applicant's wife, who was a co-defendant in the case, had an extensive history of drug abuse, and Applicant was desperate to help her. (*Id.*) Abiodun had called the police on three occasions to try to help his wife, but was told they could not do anything for him. (*Id.*)

Abiodun also testified that at the time of the drug transactions, the informant had threatened to harm his wife physically, and had told her that he would be at her apartment the next day and that she better give him whatever she wanted. (R. Vol. 3, Abiodun testimony) Abiodun stated that he agreed to pick up the cocaine and take it back to his wife on June 21, 2001, and to deliver drugs to the informant on June 27, 1001, because he feared for his wife's safety. (*Id.*)

Applicant asserts five claims in his §2254 Application which are cognizable against Respondent Colorado Attorney General[3]: (1) the prosecutor failed to disclose exculpatory evidence to the jury in violation of Applicant's Fourteenth Amendment due process rights; (2) Applicant's conviction was obtained in violation of his Sixth Amendment confrontation rights; (3) Applicant's trial counsel was constitutionally ineffective in failing: to file a motion to suppress evidence; to properly cross examine a witness; to request a curative instruction; and in failing to call Applicant's wife to testify; (4) Applicant was convicted for his "constitutionally protected" conduct; and (5) Applicant's convictions for possession and distribution of the same cocaine violated the constitutional prohibition against double jeopardy; Applicant was denied his right to due process when: (a) the prosecutor asked

---

[3]Applicant's sixth claim for relief is asserted against defendant Maurer and is addressed in the July 11, 2006 Recommendation of United States Magistrate Judge.

him whether he was a United States citizen; (b) the prosecution failed to establish beyond a reasonable doubt that Applicant possessed or distributed at least twenty-five grams or one ounce of cocaine; (c) the jury instructions were overly broad; and, (d) the evidence was insufficient to establish that Applicant represented the amount of the charged drug transaction was at least twenty-five grams or one ounce; and, Applicant's equal protection rights were violated when he received a harsher sentence than his co-defendant.

II.

Respondents concede that the Application was timely filed under the one year limitation period established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1218 (effective April 24, 1996). Respondents argue, however, that Applicant has procedurally defaulted several of his claims because he did not exhaust them in the state courts and he no longer has a state law remedy available to him.

A state prisoner must ordinarily exhaust available state court remedies prior to seeking federal habeas corpus relief. 28 U.S.C. §2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509 (1982). The exhaustion requirement is satisfied if the federal claims have been correctly presented to the highest state court, either on direct appeal or in a post conviction attack. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

A habeas applicant who has failed to exhaust state remedies has committed an anticipatory procedural default of his federal claims if the state courts would now find the claims to be procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

In such circumstances, the applicant has satisfied the technical requirements of exhaustion because state remedies are no longer available to him; however, because the applicant's claims would be barred in the state courts on procedural grounds, the federal habeas court may not address the merits of the federal claims unless the applicant can demonstrate cause for the procedural default and actual prejudice as a result of the constitutional violation; or, that a fundamental miscarriage of justice will occur if the federal court does not consider his claims. *Coleman*, 501 U.S. at 750.

Applicant filed a direct appeal of his conviction in which he raised three of the claims he asserts as sub parts of claim five of his §2254 Application. Specifically, he claimed that: (1) the prosecutor presented insufficient evidence to support a finding that Applicant possessed and distributed at least twenty-five grams or one ounce of a schedule II controlled substance; (2) Applicant's convictions for possession must merge into his convictions for distribution because the double jeopardy clause prohibits multiple convictions for both distribution and possession based on the same facts; and, (3) that the prosecutor's misconduct in asking Applicant about his status as a non U.S. citizen violated Applicant's due process rights. (State Respondent's Ex. A) The Colorado Court of Appeals rejected Applicant's first and third grounds for reversal, but agreed with Applicant that his convictions for possession and distribution must merge, thereby affirming the convictions for the distribution offenses. (State Respondent's Ex. C, *People v. Abiodun*, 87 P.3d 164 (Colo.App. 2004). Applicant then petitioned the Colorado Supreme Court for certiorari review on the claims rejected by the CCA. (State Respondent's Ex. D) The People cross-petitioned for certiorari review on the issue of whether the CCA erred in determining that

the facts at trial mandated merger of Applicant's conviction for possession into his distribution convictions. (State Respondent's Ex. E) The Colorado Supreme Court granted certiorari review and affirmed the CCA's decision in *People v. Abiodun*, 111 P.3d 462 (Colo. 2005). (State Respondent's Ex. I)

I recommend finding that Applicant has exhausted the sub parts of claim five of his §2254 Application alleging that there was insufficient evidence to support his conviction, that his convictions for possession and distribution based on the same facts violate double jeopardy, and that the prosecutor engaged in misconduct which violated his due process right to a fair trial. Accordingly, I address the merits of those claims in Section III, *infra*.

Applicant asserted the other claims raised in his §2254 Application in a state post conviction motion filed *pro se* in Jefferson County District Court on June 17, 2005. (R. Vol. 1, at 183) The trial court denied the motion without a hearing as time-barred and without merit on June 28, 2005. (*Id.*, at 203) Applicant did not appeal the denial of his state post conviction motion to the Colorado Court of Appeals. Because Applicant did not exhaust his state post conviction remedies in the Colorado appellate courts, he has procedurally defaulted all of the claims asserted in his §2254 Application which were not exhausted on direct appeal.[4] *See Watson v. New Mexico*, 45 F.3d 385, 387 (10th Cir. 1995)(holding that

_____

[4]It does not appear that Applicant has a state court remedy available to him at this time. Applicant has already filed one state post conviction motion. If he filed a second motion raising the same claims, the motion would be subject to denial under state procedural rules which bar successive post conviction motions, absent exceptional circumstances, none of which appear to be applicable to Mr. Abiodun. *See* Colo.Crim.P. 35(c)(3)(VII)(enumerating circumstances). Applicant was *pro se* when he filed his state post conviction motion. The Colorado appellate courts have recognized that the lack of counsel in post-conviction proceedings is a special circumstance which may warrant review of a successive post conviction motion if the prisoner failed to raise all of his constitutional claims in a single motion. *See People v. Hubbard*, 519 P.2d 945, 948 (Colo. 1974)(recognizing that convicted defendant has a right to counsel in post conviction proceedings and that a convicted defendant representing himself pro se cannot reasonably be expected to raise all of his or her claims in a single proceeding); *People v.*

7

prisoner's failure to seek review of trial court's denial of post conviction motion in state appellate court constituted procedural default for purposes of federal habeas review).

Accordingly, Mr. Abiodun must demonstrate cause and prejudice for his procedural default, or that a fundamental miscarriage of justice will result if the court does not hear the merits of his claims on federal habeas review.

To demonstrate "cause" for a procedural default, the prisoner must show "that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). To excuse a procedural default under the fundamental miscarriage of justice exception, the prisoner must demonstrate that the alleged constitutional violation has probably resulted in the conviction of one who is actually innocent. *Carrier*, 477 U.S. at 496.

On November 29, 2005, the court ordered Applicant to show cause why his §2254 Application should not be dismissed for failure to exhaust state court remedies as to the

---

*Naranjo*, 738 P.2d 407, 409 (Colo.App.1987) ("[S]ince [the] defendant did not have legal representation during the course of his first Crim. P. 35(c) proceeding, he is not necessarily precluded from relying upon other grounds for relief in his present motion."); *see, also,* Colo.Crim.P. 35(c)(3)(VII)(e)(stating that trial court may consider claim raised in a prior post conviction proceeding "where an objective factor, external to the defense and not attributable to the defendant, made raising the claim impracticable").

Here, Applicant raised all of his claims in his first state post conviction motion. Thus, the issue is not his failure to assert all claims in a single motion, but rather, his failure to file an appeal of the trial court's denial of that motion. Because the trial court denied the first motion as being without merit, it is highly unlikely that the court would entertain a second motion raising identical claims.

claims Applicant asserted in his state post conviction motion.  Applicant responded to the show cause order on December 16, 2005 stating that his court-appointed public defender was constitutionally ineffective in failing to assert the claims on direct appeal of his conviction.  On December 21, 2005, the court discharged the show cause order, accepting Applicant's allegations as true. The court declined to deny the §2254 Application for failure to exhaust state court remedies based on the record before the court at that time. *See* December 21, 2005 Order Discharging Show Cause Order and Drawing Case to a District Judge and a Magistrate Judge.

Because the Sixth Amendment entitles criminal defendants to effective assistance of counsel during a direct appeal, *see Evitts v. Lucey*, 469 U.S. 387 (1985), the Supreme Court has held that ineffective assistance of appellate counsel is cause for a procedural default. *Murray*, 477 U.S. at 488.[5]

To establish that appellate counsel was constitutionally ineffective, Applicant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Here, Applicant alleges that his appellate counsel failed to raise several issues on direct appeal.  Counsel's failure to raise an unmeritorious issue on appeal "'does not

---

[5]A claim of ineffective assistance of appellate counsel should be presented to the state courts as an independent claim before it may be asserted as cause for a procedural default in a federal habeas corpus proceeding. *See Murray*, 477 U.S. at 489.  Applicant has not exhausted this claim in the state courts; however, because the claim is without merit, it is unnecessary to enforce the exhaustion requirement because the entire Application is subject to dismissal on the merits, as discussed in the text, *infra. See* 28 U.S.C. §2254(b)(2); *see, also, Hoxsie v. Kerby*, 108 F.3d 1239 (10th Cir. 1997)(reviewing habeas petition containing both exhausted and unexhausted claims and dismissing all claims for lack of merit, some on grounds of procedural default).

constitute constitutionally ineffective assistance of counsel.'" *United States v. Cook*, 45 F.3d 388, 393 (10th Cir. 1995)(quoting *United States v. Dixon*, 1 F.3d 1080, 1084 n.5 (10th Cir. 1993)). Conversely, appellate counsel is constitutionally ineffective if he or she omits an issue that is a "dead-bang winner," i.e., an issue that is obvious from the trial record and "one which would have resulted in a reversal on appeal." *Cook*, 45 F.3d at 395; *see, also, Johnson v. Gibson,* 16 9 F.3d 1239, 1251 (10th Cir.1999)(framing issue as whether the omitted claims were "clearly meritorious")*; Jackson v. Shanks,* 143 F.3d 1313, 1321 (10th Cir.1998)(framing inquiry as whether the omitted claims were "obvious winners").

Accordingly, I look at the merits of the claims Applicant failed to assert on direct appeal, with one exception, to determine whether they were "dead bang winners" such that appellate counsel was constitutionally ineffective in failing to assert them on appeal so that Applicant's failure to exhaust them is excused. *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). The single exception is Applicant's claim that his trial counsel was constitutionally ineffective. The Colorado Supreme Court has expressed a preference for raising ineffective assistance of counsel claims in a post conviction proceeding, instead of on direct appeal. *See People v. Thomas*, 867 P.2d 880, 886 (Colo. 1994); *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). The Tenth Circuit has also recognized that ineffective assistance claims are unique in that they often require development of facts outside the trial court record and therefore cannot be resolved on direct appeal. *See Brecheen v. Reynolds*, 41 F.3d 1343, 1363-1364 (10th Cir. 1994). Accordingly, appellate counsel's failure to raise an ineffective assistance of trial counsel claim on direct appeal

10

did not fall below an objective standard of reasonableness under the *Strickland* standard and thus did not constitute ineffective assistance of appellate counsel.

I now look at the merits of Applicant's other non exhausted claims to determine if ineffective assistance of appellate counsel excuses Applicant's failure to exhaust his state court remedies.

A.      Prosecutor's Failure to Disclose Exculpatory Evidence

Applicant's first claim is that the prosecutor failed to disclose exculpatory evidence to the jury in violation of Applicant's Fourteenth Amendment due process rights. Specifically, Applicant complains that the prosecutor failed to tell the jury that Applicant's co-defendant, Mrs. Abiodun, pleaded guilty to distribution of a schedule II controlled substance, was sentenced to four years community corrections and was ordered to complete a substance abuse program.  (Application, at 5)

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution has a duty to disclose exculpatory evidence.  Evidence is exculpatory under *Brady* if it is generally favorable to the accused's defense or impeachment evidence. *United States v. Geames*, 427 F.3d 1333, 1336 (10th Cir. 2004)(citation omitted).  To establish a *Brady* violation, Applicant must show that: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Geames*, 427 F.3d at 1337 (citing *Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir.1995))(citation omitted).

Applicant does not explain, nor is it clear to the court, how his wife's conviction for distribution was favorable to Applicant's defense.  The evidence at trial implicates

11

Applicant in both the June 21, 2001 and June 27, 2001 drug transactions, regardless of his wife's culpability. Because Applicant's *Brady* claim is without merit, I recommend finding that Applicant's appellate counsel was not constitutionally ineffective in failing to raise the claim on direct appeal.

B.      Violation of Applicant's Sixth Amendment Confrontation Rights

In claim two, Applicant asserts that his Sixth Amendment confrontation rights, as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004), were violated when defense counsel failed to confront prosecution witness Detective Pickett with: Pickett's statement that Applicant allegedly told him that on June 27, 2001, he was going to Safeway to sell about an ounce of cocaine; and, the information that Pickett had an agreement with Applicant not to charge Applicant with drug offenses in exchange for Applicant's cooperation with law enforcement officers in future drug transactions – an agreement that Pickett breached when he brought charges against Applicant after discovering Applicant's pending application for naturalization.

The Sixth Amendment Confrontation Clause guarantees a criminal defendant the opportunity to cross examine the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)(citing *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)). Cross examination is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* 415 U.S. at 316. In *Crawford*, the Supreme Court held that the admission of testimonial statements from a witness who is absent from trial violates the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross examination. 541 U.S. at 68.

Here, the record reflects that defense counsel had the opportunity to cross examine Detective Pickett without any restraints imposed by the trial court. (R. Vol. III, Testimony of Jonathon Pickett, cross examination) Moreover, there was no *Crawford* violation because Applicant was present at trial and testified on his own behalf. Applicant had the opportunity to refute Detective Pickett's statements about representations made by Applicant during the police interrogation.

Because Applicant's Sixth Amendment confrontation claim is without merit, I recommend finding that Applicant's appellate counsel was not constitutionally ineffective in failing to raise the claim on direct appeal.

C.    Applicant was Prosecuted for His "Constitutionally Protected" Conduct

Applicant's fourth claim in the §2254 Application is difficult to comprehend. However, because Applicant is *pro se*, I construe his filings liberally and together. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). In Applicant's state post conviction motion, he claimed that his convictions were unconstitutional because he was coerced into waiving his Fifth Amendment rights under *Miranda*[6] by Detective Pickett's promise to Applicant that if Applicant cooperated with law enforcement officers in staging drug transactions, no charges would be filed against him. Applicant claims that Pickett breached their agreement and filed possession and distribution charges against him after Pickett discovered Applicant's  pending petition for naturalization.

_____

[6]*Miranda v. Arizona*, 384 U.S. 436 (1966).

The prosecution bears the burden of proving the *Miranda* waiver, *Colorado v. Connelly*, 479 U.S. 157, 169 (1986), and the voluntariness of the confession. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). "When the government obtains incriminating statements through acts, threats, or promises which cause the defendant's will to be overborne, it violates the defendant's Fifth Amendment rights and the statements are inadmissible at trial as evidence of guilt." *United States v. Toles*, 297 F.3d 959, 965 (10th Cir. 2002). The court determines the voluntariness of the defendant's confession based on the totality of the circumstances. *Id*. at 965-66.

Detective Pickett took Applicant into the police interview room after his arrest, advised him about his *Miranda* rights, and explained to Applicant that he should sign the waiver form if he was willing to waive his rights and speak to the Detective without the presence of an attorney. According to Pickett, there was no discussion about "a deal" at that time. Pickett stated that Applicant appeared to understand the advisement and was willing to talk to him about the June 27, 2001 transaction. Pickett talked to Applicant for about fifteen minutes. The tone of the interview was conversational. Pickett testified that Applicant represented to him during the interview that Applicant's intent on June 27, 2001 was to "sell about an ounce of cocaine for $2,000." (*See*, *generally*, R. Vol. 3, Pickett testimony)

Mr. Abiodun is a native of Nigeria who has lived in the United States since 1990. He speaks fluent English and has a bachelor's degree from Metro State College in Denver. Applicant testified that he was relieved to be able to tell a law enforcement officer about everything that had happened leading up to his arrest. (R. Vol. 3, Abiodun testimony)

14

Applicant did not testify that he waived his right to remain silent only because Pickett promised not to file charges against him in exchange for his cooperation with law enforcement officers on drug cases, or that Picket coerced him in any way. (*Id.*)

Applicant's trial counsel did not challenge the voluntariness of Applicant's statement to the police at any time before or during trial. (*See, generally,* R. Vols. 1-3)

The state court record does not support Applicant's claim that Detective Pickett coerced him into signing the *Miranda* waiver. *See Downey v. People*, 25 P.3d 1200, 1202 n.3 (Colo. 2001)(noting that review of claims asserted on direct appeal is limited to the existing trial court record and may not be supplemented by additional evidence). Accordingly, I recommend finding that Applicant's appellate counsel was not constitutionally ineffective in failing to raise claim four on direct appeal.

D.    Erroneous Jury Instructions

Plaintiff claims that the jury instructions were overly broad, in violation of his Fourteenth Amendment due process rights because: the charging document did not delineate a distinct period or transaction for two counts of possession and two counts of distribution; the jury was instructed without the affirmative defense in Instruction No. 18; and, the jury was instructed that the Applicant must have knowingly possessed the cocaine in order to have been found guilty for that offense.

"[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Patterson v. New York*, 432 U.S. 197, 210 (1977).

"Unless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." *Tiger v. Workman*, 445 F.3d 1265, 1267 (10th Cir. 2006)(citing *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)).

Instruction No. 2 explains the nature of the charges against Applicant and describes two separate offenses – one occurring on June 21, 2001, involving Applicant's possession and distribution of 25-450 grams of a schedule II controlled substance, and the other occurring on June 27, 2001, involving Applicant's possession and distribution of 25-450 grams of a Schedule II controlled substance.   (R. Vol. 1, at 55) The instructions to the jury on the substantive offenses comported with the applicable state statute defining the offenses of possession and distribution, COLO.REV.STAT. ("C.R.S.") §18-18-405(1) and (2)(a)(I) (1999). (*Id.*, Instruction Nos. 11-16, at 64-71) The jury was also instructed on Applicant's affirmative defense of duress – i.e., that Applicant engaged in the prohibited conduct because of the use or threatened use of unlawful force upon him or upon another person, which a reasonable person in the Applicant's situation would have been unable to resist.  (*Id.*, Instruction No. 17-18, at 72-73)

I recommend finding that Mr. Abiodun has failed to show that the jury instructions were erroneous under state law, much less that they violated his due process rights. Accordingly, appellate counsel's failure to challenge the jury instructions on direct appeal did not fall below an objective standard of reasonableness under *Strickland* and thus does not excuse Applicant's procedural default of that claim in this federal habeas corpus proceeding.

16

E.    Disparity in Applicant's and Co-Defendant's Sentences

Applicant next claims that the disparity between his sentence and his co-defendant's sentence violated his equal protection rights.  Application was sentenced to four years imprisonment, plus a five year term of mandatory parole.  The record reflects that Applicant's co-defendant, Mrs. Abiodun, pleaded guilty to one count of distribution of a controlled substance in exchange for the prosecutor's dismissal of one count of possession of a controlled substance. Mrs. Abiodun was initially sentenced to four years community corrections with Peer One placement. She was resentenced to four years of intensive supervision probation and ordered to complete a substance abuse treatment program after she was rejected by the Peer One program.

As an initial matter, Applicant cannot show an equal protection violation because the record demonstrates that he and his co-defendant are not similarly situated.  *See City of Cleburne v. Cleburne Living* Center, 473 U.S. 432, 439 (1985).  Moreover, "absent specific allegations of constitutionally impermissible motivation . . . a sentence within the statutory limits is not open to review." *United States v. Alfonso*, 738 F.2d 369, 373 (10th Cir. 1984)

Applicant's four year prison term was within the statutory sentencing range.[7] Applicant complains that he received a harsher sentence than his wife because she is a U.S. citizen and he is not; however, U.S. citizenship has not been recognized as a

_____

[7]Application's conviction for distribution of a schedule II controlled substance was a class three felony.  §18-18-405(1)(a), 2(a)(I), C.R.S. (1999); *see, also,* Judgment of Conviction, Sentence, R. Vol. 1, at 84. The presumptive sentencing range prescribed by the Colorado General Assembly for a class three felony in 2001 was four to twelve years imprisonment, with a five year term of mandatory parole.  *See* §18-1-105(1)(a)(V)(A), C.R.S., (1999).

protected class for equal protection purposes.  Thus, the disparate sentences need only bear a rational relationship to a legitimate state end.  *See City of Cleburne*, 473 U.S. at 439-440.  Here, the record reflects that the information known to law enforcement officers at the relevant time, notwithstanding Mr. Abiodun's testimony at trial to the contrary, was that Mr. Abiodun arranged for the June 27, 2001 drug transaction with the confidential informant and Mrs. Abiodun was not involved.  Accordingly, the disparity in sentencing can be explained by the fact that Mrs. Abiodun participated in the June 21, 2001 drug transaction only, while Mr. Abiodun was implicated in both drug deals.

Accordingly, I recommend finding that appellate counsel's failure to raise Applicant's equal protection claim on direct appeal was not objectively unreasonable under *Strickland* and thus does not excuse Applicant's procedural default of that claim in this federal habeas proceeding.

To summarize, I recommend finding that Applicant has failed to show that his appellate counsel was constitutionally ineffective in failing to raise the following claims on direct appeal: (1) that the prosecutor failed to disclose exculpatory evidence to the jury in violation of Applicant's Fourteenth Amendment due process rights; (2) that Applicant's conviction was obtained in violation of his Sixth Amendment confrontation rights; (3) that Applicant's trial counsel was constitutionally ineffective in failing: to file a motion to suppress evidence; to properly cross examine a witness; to request a curative instruction; and in failing to call Applicant's wife to testify; (4) that Applicant was convicted for his "constitutionally protected" conduct; and, (5) that the jury instructions were overly broad;

and, that Applicant's equal protection rights were violated when he received a harsher sentence than his co-defendant.

Moreover, because Applicant did not have a federal constitutional right to counsel in the state post conviction proceeding, his *pro se* status does not constitute cause to excuse his procedural default in this federal habeas proceeding. *See Coleman*, 501 U.S. at 757 (1991).

I further recommend finding that Applicant has failed to make a colorable showing that a fundamental miscarriage of justice will result if this court does not hear the merits of the procedurally defaulted claims.  Mr. Abiodun does not state facts anywhere in his state or federal pleadings to show that he is "actually innocent" of the crimes of which he was convicted, *see Murray*, 477 U.S. at 495-96, nor has he proffered any "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

Accordingly, claims one, two, three, four, and the sub parts of claim five challenging the jury instructions and Applicant's sentence (equal protection claim) should be denied as procedurally defaulted.

III.

I next consider the merits of the claims Applicant exhausted in the state courts. Under the AEDPA, federal habeas relief will not be granted on a constitutional claim adjudicated on the merits in the state courts unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d)(1) and (2). In *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), the Supreme Court held that a state court decision is "contrary to" Supreme Court precedent only when it "arrives at a conclusion opposite to that reached by this Court on a question of law," or if the state court "decides a case differently than this Court has on a set of materially indistinguishable facts." The state court decision need not cite Supreme Court cases, as long as neither the reasoning nor the result of the state court determination contradicts Supreme Court law. *Early v. Packer*, 537 U.S. 3, 8 (2002). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 407-08. An application is not unreasonable merely because the habeas court determines it to be incorrect. *Id.* at 411. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The federal habeas court presumes that the state courts' determination of factual issues is correct. 28 U.S.C. §2254(e)(1); *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999). The Applicant bears the burden to rebut the presumption with clear and convincing evidence. *Id.*

A.    Prosecutorial Misconduct

Applicant claims that the prosecutor engaged in misconduct and violated his due process right to a fair trial when he asked Applicant "you are not a U.S. citizen, is that right?"  (R. Vol. 3, Abiodun testimony, at 32)

To prevail on his claim, Applicant must show that the prosecution's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). Such a determination may be made only after taking notice of all the surrounding circumstances, including the strength of the state's case.  *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir.2006) (internal quotations and citations omitted).

On direct appeal of Applicant's conviction, the Colorado Court of Appeals held:

> [I]n attempting to establish that defendant was not ignorant of American language and culture, the prosecutor asked him, `You are not a U.S. citizen, is that right?' The trial court sustained defense counsel's objection to this question based on relevance. The prosecutor then asked defendant about his level of education and the time he had lived in the United States.
>
> Upon review of the record, we conclude that the information elicited was repetitive of that obtained on direct examination and was relevant to the issues at trial.  Thus, the questioning was not prejudicial, flagrant, or glaringly or tremendously improper.

*Abiodun*, 804 P.3d at 167.

Although the prosecutor's question about Applicant's U.S. citizenship was arguably improper, it was not overly prejudicial when considered in the context of the record as a

21

whole. During the initial cross examination, Mr. Abiodun emphasized in his answers to the prosecutor's questions that he was not a criminal, that he was not familiar with drug transactions, and that he had been involved in the two transactions at issue only out of necessity because of his wife's drug habit.   (R. Vol. 3, Abiodun testimony, cross examination)  The prosecutor then attempted to establish that Applicant was knowledgeable about drug transactions and terminology, before inquiring about Applicant's U.S. citizenship status.  (*Id.*)  After defense counsel objected, the prosecutor confirmed that Applicant had a college degree and had been in the United States about eleven years at the time of the offenses. (*Id.*)  Defense counsel had already established the same facts on direct examination.  (R. Vol. 3, Abiodun testimony)

The prosecutor did not comment on Applicant's lack of U.S. citizenship in closing argument.  (R. Vol. 3, prosecutor's closing statement)

Moreover, Mr. Abiodun admitted to the drug sales.  (R. Vol. 3 Abiodun testimony; Pickett testimony).

I recommend finding that the Colorado Court of Appeals decision was not contrary to, or an unreasonable application of, *Donnelly v. DeChristoforo*.  The state court record as a whole reflects that the prosecutor's question about Mr. Abiodun's U.S. citizenship did not infect the trial with unfairness so as to make the resulting conviction a denial of due process.  Applicant's due process claim based on prosecutorial misconduct should be denied.

B.    Applicant's Convictions for Possession and Distribution of Cocaine
      Based on the Same Facts Violates Double Jeopardy

Applicant next claims that his convictions for possession and distribution of cocaine

based on the same facts violates the constitutional prohibition against being placed twice

in jeopardy for the same offense.

The Court of Appeals held that Applicant's convictions for possession must merge

with the distribution convictions because the possession was incidental and necessary to

the distribution for both the June 21 and June 27, 2001 transactions.  *Abiodun*, 87 P.3d at

167.  The Court of Appeals thus vacated the convictions for possession of a controlled

substance and affirmed the distribution convictions.  *Id.*

On certiorari review, the Colorado Supreme Court affirmed the judgment of the

Colorado Court of Appeals vacating the convictions for possession.  *Abiodun*, 111 P.3d

at 471.[8]

Applicant's double jeopardy claim should be denied because the Colorado appellate

courts have already afforded him all the relief to which he is entitled.

C.    Insufficient Evidence to Support Conviction

Finally, Applicant claims that there was insufficient evidence to support his

convictions for distribution of a controlled substance on June 21, 2001 and June 27, 2001.

Specifically, Applicant asserts that the evidence did not show that he possessed or

distributed at least twenty-five grams or one ounce of cocaine, or that he represented the

_____

[8]The Colorado Supreme Court also recognized that Applicant's multiple convictions for
distribution did not violate double jeopardy because the convictions were supported by evidence of
separate sales or attempted sales to the informant, on separate occasions, six days apart.  *Abiodun*, 111
P.3d at 471.

amount of cocaine to be at least twenty-five grams or one ounce at any time prior to or during the drug transaction.

Due process requires that a criminal conviction be supported by evidence sufficient to establish the defendant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 322 (1979). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in the original).

The Colorado courts' interpretation of the state controlled substances act is a matter of state law binding on the federal habeas court. See *Brown v. Ohio*, 432 U.S. 161, 167 (1977)(citing *Garner v. Louisiana*, 368 U.S. 157, 166 (1961)); *see, also, Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir. 2003)(recognizing that federal habeas court applies state law regarding the substantive elements of the offense to determine the sufficiency of the evidence).

A defendant who is convicted of possessing or distributing "an amount that is or has been represented to be" at least twenty-five grams or one ounce, but less than 450 grams of a schedule II controlled substance, must be sentenced to the minimum term of imprisonment in the presumptive range provided in §18-1-105(1)(a), C.R.S. *See* §18-18-405(3)(a)(I), C.R.S.

The only evidence in the record establishing the requisite amount was Applicant's statement during his interview with Detective Picket following arrest that he went to a store to sell "about an ounce of crack cocaine." (R. Vol. 3, Pickett testimony)

The Colorado Court of Appeals determined that §18-18-405(4)(a)(I), C.R.S., covered all representations made by a defendant regarding the amount of a controlled substance, and was not limited only to representations made during the drug transaction. *Abiodun*, 87 P.3d at 166. The Court of Appeals' decision that Applicant's representation to Detective Pickett during a police interrogation about the amount of the controlled substance was sufficient to establish that Applicant "represented" that he was selling twenty-five grams, or one ounce, of cocaine, is a matter of state law which is binding on this court. *Id.* Accordingly, the evidence was sufficient to support Applicant's conviction for distribution of an amount "represented to be" at least twenty five grams or one ounce of a schedule II controlled substance. I recommend finding that the Colorado Court of Appeals decision was not contrary to, or an unreasonable application of, *Jackson*. Applicant's claim that there was insufficient evidence to support his conviction should be denied.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254, filed by Benad Abiodun on November 15, 2006, be **DENIED**. It is

**FURTHER RECOMMENDED** that this action be **DISMISSED WITH PREJUDICE.**

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district judge shall make a de novo determination of**

**those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated October 19, 2006.

BY THE COURT:

Michael J. Watanabe *for*
PATRICIA A. COAN
United States Magistrate Judge